Good morning and welcome to the 11th Circuit. Judge Grant and I are very grateful to Judge Corey Mays from the Northern District of Alabama who has graciously agreed to join us this week and help us out with our cases despite his very busy caseload at home, so we thank him for that. Just a couple of announcements before we start. Our timing system is like a traffic light system. The light will display green while you're proceeding with your argument. When you have two minutes left in your allotted time, the light will turn yellow, and when the light turns red, we ask that you quickly bring your argument to a conclusion, the exception being if you're answering one of our questions, then you may complete your answer, and we won't hold that time against you if you've reserved time for rebuttal. The other thing is we are very prepared on your cases, and so feel free to dispense with long introductions and go right to the important points in your argument. Our first case this morning is No. 2211462, Paul Ossmann v. Meredith Corporation. We have Mr. Garber for the appellant. Mr. Garber, I see that you've reserved four minutes for rebuttal. Garber That's correct, Your Honor. Thank you. Kagan You may begin when you're ready. Garber Thank you, Your Honor. Judge Pryor, and may it please the Court, the Supreme Court in Bostock v. Clayton County said when it comes to but-for causation, an employer violates the anti-discrimination laws when it intentionally fires an individual employee based in part on a protected characteristic, and it doesn't matter if other factors besides the plaintiff's Here Kagan It has to be a but-for cause, correct? Garber Absolutely. But-for cause, and it is a but-for cause, not sole cause. That was made clear by this Court in the Ziadad case, and, Judge Pryor, you were on that panel. Kagan I've got a litigation question for you. Your theory is that Bach was the decision-maker, and the district court agreed with you, correct? Garber Yes. Kagan Why was Bach never deposed? You're asking us in the brief to consider the EEO analysis to be direct evidence, but we never heard from Bach, and we don't know that she even looked at it, much less that she used it. Why as a matter of strategy, et cetera, was she never deposed? Garber Your Honor, that was a decision made before I joined the case. I cannot answer it. If I had been involved, I would have deposed Bach as the final decision-maker. If we were to agree with you and send this case back, do you expect that she would be questioned at trial? Or in other words, are you just planning to rely solely on what I would consider more circumstantial evidence that it was seen by her, and that she considered, but you don't have direct evidence that she did? Garber That's correct, Your Honor. My understanding is she's in Des Moines, Iowa, so she's outside the geographical limits on the subpoena. Of course, the defendant could produce her by its choice. Kagan What's our standard of review for the view of Bach as the decision-maker? Garber Review would be clearly erroneous. It is still a factual finding. It's not a legal determination that she's the final decision-maker. It's a factual finding, and it is based on two things, and it's discussed in our briefs. Number one, she's the only person from corporate identified as being involved in the decision to terminate. She's the only person from corporate identified, and this is in the defendant's interrogatory responses. The only person from corporate identified as having knowledge of the plaintiff's termination. Also, the HR manager testified in her deposition that she specifically sent the EEO analysis to Bach for purposes of having the final decision made on whether or not to terminate Ostman. And in terms of whether she would have reviewed it, as the HR manager testified, there was no other information in her email identifying anything about the termination recommendation or request. So, the only way Bach could know who she was considering was to have looked at the EEO analysis. Doesn't that suggest, not that she was the final decision-maker, but that she was just running the traps to make sure that there wasn't some sort of racial discrimination problem based on kind of what else has happened in that unit? I mean, it seems to me that the people who made the decision were the ones who looked at all of the credible allegations of sexual harassment, some of which your client at least admitted to certain of the conducts. So, why would we possibly see her as the final decision-maker rather than someone from corporate just making sure that there wasn't going to be a problem with a lawsuit just like this? In the defendant's interrogatory response number five, they admitted that all that was done on the Atlanta end was to make a recommendation. At no point in the interrogatory answers or in the testimony of the HR manager, as I remember it, did she say, we made the decision and we were just looking for somebody in corporate to review the potential discrimination issue. But your Honor, picking up on your point, even if Bach's role was only to focus on whether or not race was being taken into account or age or gender, or that the racial mix or gender mix or age mix was not going to be negatively affected by the termination, that sign-off was required by her before Ostman could be terminated. Isn't your best evidence that Beringer testified that this was a recommendation? That was her word. Agreed, Your Honor. Absolutely. If Bach is the only person to read the recommendation and then it comes back from her as being approved, then she would be the decision-maker. I agree, Your Honor. So, with respect to both of your points, we agree, and either way, Bach had the final say, and in exercising that final say, she was required by virtue of the EEO analysis, which is addendum to our opening brief, she was required to take into account three protected characteristics, race, age, and gender. And when you look at how Meredith formulates their consideration, the consideration of these characteristics, race was the only characteristic which ran against Ostman. He was one of four white employees in the weather department out of six, as opposed to one person who was African American and one who was Hispanic. So, discharging Ostman would not have negatively affected the racial balance or the racial mix of the weather group, as opposed to on the matters of age and gender. But by the same token, then, there are only two men and four women. So by the same token, if you're arguing that you can say it was but for race, then why would they not have protected him because men were in the minority when it comes to that demographic? How do you say they used one but not the other? The way we've reviewed it, Your Honor, and analyzed it, with respect to the issues of age and gender, Ostman would have been in the minority, would have been in the protected group. So, those factors favored him. They favored not terminating him. Race, on the other hand, was a factor that did favor terminating him. And we discuss it, I can continue on, but it's discussed in our opening brief at pages 17 to 22, where we walk through this analysis. So, even if age and gender are characteristics that favor him, and the question is, how can we determine a but for cause, you know, I come back to what I said at the top, which is under Bostock, the question is, was it based in part, was the decision here based in part on race? And it doesn't matter if other factors were involved. So, it shouldn't matter if age and gender are involved. But the analysis that you're referring to also includes the reasons why he was terminated, the sexual harassment-related reasons. So, why isn't it the case, why isn't the inference that he was terminated for those reasons and his race did not prevent him from being terminated? Fair question, Your Honor. With respect to the harassment reasons, as we argue in our brief, the reasons listed in docket number 71-4, which is addendum A, the actual EEO analysis used by the decision maker, the issues that were the conduct that was identified in the EEO analysis and it's EEO analysis, two of those incidents, one is in April of 2016, one is in May of 2017, those predate Ostman's promotion to chief meteorologist. And the decision maker would have known this, Spock would have known it because in paragraph 4 of the EEO analysis, it specifically says Ostman was promoted in August of 2017. So the only justifications that are identified in the EEO analysis for firing Ostman are events that occurred about two and three years prior to the request to terminate him. So it raises the question, in our view, are those not pretextual? Are they not hard-to-believe, suspicious justifications for firing someone? Your problem is that you have to prove that he was terminated on account of race, right? So saying that those two reasons are pretextual still doesn't get you there, to the ultimate question. Your Honor, my answer to that is on account of race means based in part on race. Race is taken into account and it's a factor. Again, it does not have to be the only factor, but it has to be. It does have to be a but-for factor. It does have to be a but-for cause, a determinative cause, as the Court said inside that. My way of putting it in Bostock was, if changing the race would have yielded a different outcome, what is your best evidence that if this had been a black male person in the Department rather than a white male, that the outcome would have been different? The best argument we have, Your Honor, is to look at the chart, the last page of 71-4, and to argue and suggest a jury should decide whether reducing the mix from four whites and two people, two persons of color, to four and one would have been, would have led to a different outcome than reducing the racial mix from four whites to three whites and then two persons of color. But you're, so I want to make sure I understand the theory of the case that you would put to the jury is that the recommenders at the local station did or did not have a racial reason for recommending this termination? Oh, we contend they did. I mean, the prima facie, using a McDonnell Douglas standard or convincing mosaic, the they made the recommendation citing prior acts of harassment or alleged harassment. It's identified here as poor judgment. Identifying those, but again, but not listing anything in recent, that is, the events that allegedly triggered the termination. Right, but what's your evidence that their decision was race-based? That the alleged violations were not only denied by Osman, but the denials are supported by the company's own documentation. The unsigned warning, for example, dated December. But that could be evidence that they wanted to fire him because they didn't like him or anything else. What's your, what's your evidence that those initial recommenders based their perspective on race? Yeah, pretext, Your Honor. Strictly a pretext argument. There's no consideration of race as clear as it is for the final decision-maker for Bach and corporate. But for the locals, it's the fact that the prima facie case is made. Osman is replaced three weeks after his termination by Jennifer Valdez, an Hispanic, which satisfies now the four elements of the prima facie case. Does it matter if Dewer and Banks, if the district court is correct that Bach is the final decision-maker, does it matter if Dewer and Banks considered race? I know you say, I know you say that they did or that you have an argument they did. But does it even matter? Let's say that the hypothetical is they truly did recommend his termination based on his conduct. And then they send up this EEO analysis to Bach. And according to Berenger, we include race to make sure that all of our decisions result in equitable outcomes. If Bach is the only person that considers race, is that enough as the final decision-maker? Thank you. Thank you. You're answering our questions, so we'll give you your full time reserved for rebuttal. Mr. Barnum. Thank you, Your Honor. Good morning. Good morning. May it please the Court. Your Honors, there are three reasons why this Court must affirm the district court's grant of summary judgment to Meredith. First, the record at the trial court and on appeal is replete with evidence that Paul Osman was a serial predatory sexual harasser, and that is the reason he was fired. Second, under the McDonnell-Douglas burden-shifting standard, Meredith met its light burden of production at the summary judgment stage. And third, appellant cannot establish pretext because he has not and he cannot put forth any affirmative and admissible evidence that Meredith's stated reason for Osman's termination is false and, under Section 1981, that race was the but-for cause for his discharge. All right. I'm going to read to you a question and answer that Barringer gave, and I need you to explain it to me. It's page 51 of her deposition. Explain to me once more, excuse me, explain to me one more time why race, whether it's for comparables or for anything, could ever be a factor in a review for a request for termination ever. Answer. The same answer I had before is to review the equitable treatment. And she's referring back to an answer she gave earlier, which was, quoting, you want to ensure you're being equitable, so you're using comparables that may include race. What does she mean that Meredith is considering race to ensure that its decisions are equitable? Well, first, Your Honor, I was at that deposition. Ms. Barringer was not referring to Mr. Osman. The question was with respect to comparables within her department, within Mr. Osman's department. The six persons in the weather department. And she testified that the reason we consider race, and she said we were trained to consider race. And, again, these comparables, it has nothing to do with similarly situated incidents. None of these persons have been accused of sexual harassment. The only reason they're included in the analysis is because of their race. What does she mean that Meredith considers race to ensure that we want to be equitable? She says it twice. Yes. Simply put. What does equitable mean when it comes to using race as a factor? To make sure that the company policies are being applied equally across race. So, for example, to make sure that we aren't terminating African-American employees for violating the sexual harassment policy, but not terminating white employees. Or to make sure that we are not terminating men or women or just sticking to race. But that means you're injecting race into the decision. And that's exactly what Lockheed Martin was. Lockheed Martin was, Lockheed used a race matrix for similar reasons to ensure that when we make this decision, we're not shifting the racial balance. And this Court said that we are going to reverse a grand of summary judgment because of, quote, the injection of race into the decision-making process. You're telling us that she testified that we inject race into the process to ensure equitable outcomes so that one racial group or one gender group, sex group, isn't unequally affected by our decisions. That's injecting race, correct? That's not what I'm saying, Your Honor. And that's not what Ms. Beringer testified to. Ms. Beringer testified that the consideration of race goes to whether or not application of company policies are being equitable, not the determination as to whether or not someone is or is not going to get a promotion or is or is not going to be fired. Explain, I don't understand what you mean by that. Let's take this case as an example. You have evidence, and I agree with you if McDonnell Douglas, which is, again, just a framework, but under McDonnell Douglas, you have met your burden in step two. These are clearly reasons that you could terminate someone. If you have reasons to terminate him, why then do you take the extra step of considering the racial makeup of the weather team? And what is the corporate policy that you're saying that you're trying to ensure a balance of? Why did you need to consider race and the racial makeup of the weather team before firing him? Why didn't you just say he committed sexual harassment? He's fired. It doesn't matter what race he is. Well, Your Honor, that is the reason he was fired. But why did you consider race? What's the corporate policy you keep referring to that has anything to do with race? One reason might be that you know you might be dragged into court on various discrimination charges, and you want to make sure that the comparators are ones that will be defensible, right? I mean, I think court doctrines put you in the position of being smart to double-check this before you fire someone. I think, Judge Grant, your point is the correct one, and the case law specifically says that the fact that an employer gathers information with respect to race to make sure that it is treating its employees equitable does not mean that it is injecting race into the consideration. And so the fact that Meredith collected race when considering or determining whether or not its policies are being applied equitably does not mean that it is injecting race into the decision as to whether or not to promote them. Define equitable. What does it mean to ensure an equitable outcome? That means to treat similarly situated people similarly under the same set of circumstances. Similarly situated in what way? Because I think that's the problem to your answer to Judge Grant's question. Similarly situated in what way? In this case, Your Honor, similarly situated means people of different races who have also violated the company's policy. See, that's the problem. That's not true. That's not what she testified to. Page 61. In this, so you picked people that had no discipline, correct? Answer. For the comparables, I picked people who were in similar jobs or the same job irrespective of discipline. The six people in that group that were divided by race, none of the other six had done anything like this. The comparable wasn't to say we terminated six people, four of whom were white, one of whom was African American, one was Hispanic, and this shows we treat all people of race the same when they commit the same conduct. She took, here are the six members of the weather team, one who is guilty, five who is innocent, and I'm looking to see if this is going to be an equitable outcome if I fire the one who is guilty, in this case a white male. What is the equitable outcome in that situation where you're not looking at what these people did? Literally, the only thing you're looking at is their race. Respectfully, Judge Mase, that's just not what she was testifying to. Read word for word what she said. She said it multiple times. I didn't look at their conduct for the comparables. I only looked at what department they worked in. Judge, but when she was talking about the comparables, she was not talking about people who had violated the company's sexual harassment policy. She was talking about people within the group, people who worked in the group, and whether or not the decision was going to have a disparate impact on the group. When Ms. Banger... What impact? Why does that matter? What impact are we talking about? When you say whether it has an impact on the makeup of the group, the only makeup we're looking at is race. So what is the makeup that we're changing? We're changing the racial makeup, correct? Correct. We're not changing the racial makeup of anyone who is in the same or similar situation as to Mr. Ostman. I think the court, my point, the court should focus on, in Ms. Barringer's testimony, when she was talking about comparables, she's talking about the people in the group. She is not suggesting that they were injecting race into the consideration of whether or not people who had violated the sexual harassment policy were going to be terminated because of race. She wasn't talking about similarly situated people as to Mr. Ostman. She was simply talking about the makeup of the newsroom, of that particular weather department. Why does it matter? He keeps coming back to that question, why does it matter? If the only thing you relied on was the conduct that he did, why does it matter what the racial makeup is of everybody else that he works with? If they didn't do anything else, why is it corporate policy to consider their race to determine an equitable outcome when the decision is made? Because the corporate policy is that we want to make sure that the policies are being applied equally to people of different races and that's a legitimate basis on which to consider race. Does it matter to this whether Bach is the final decision maker or the local individuals who made the initial decision as the final decision maker? Your Honor, Judge Brandt, we suggested, and in our brief, that Ms. Bach was not the final decision maker, that Lyle Banks and Steve Doerr were the final decision makers. They had all of the information with respect to Ostman's predatory history of sexual harassment. The idea that they are the final decision makers, they also knew what Laura Beringer testified to in her deposition and what she put in her affidavit, that there were African American employees who were also terminated because they violated the sexual harassment policy. Would we need to, in order to make that conclusion that they were the final decision makers, would we need to find that it was clear error of the district court to say that Bach was the final decision maker? I don't know that you need to actually find that they were the final decision makers to reach the same conclusion. I think I agree that you would need to find clear error, but whether Ms. Bach is the decision maker or Mr. Doerr and Mr. Banks, there is no evidence in the record, and when we're talking about the burden-shifting standard of McDonnell Douglas, when we get to the pretext stage, it is incumbent upon the plaintiff to come forward with admissible, affirmative evidence, not only that the stated reason was false, meaning that we didn't actually believe that he violated the company policy, but they also have to show that the decision was but for race under the Section 1981 standard, not a motivating factor, not a mixed motive factor. When counsel described the standard of causation, he referred to Bostock. Bostock is not the standard of causation. It's Comcast. And I would point the Court's attention to the fact that Bostock was decided three months after Comcast. They're the same analysis, the same author with the same analysis. But they're actually not, Your Honor. What's the difference? What did Comcast change from Bostock? Actually Comcast was decided before Bostock. Well, what changed between the two? Well, Bostock is a Title VII case. But they applied but for. They could have done motivating factor, and they didn't. And they articulated what but for means. And Comcast, Justice Gorsuch, articulated what but for means. And it's the same. I don't understand what the difference between the two is. Well, because Bostock is a Title VII case, and when Congress amended Title VII in 1991, Congress added in mixed motive and motivating factors as a standard for causation. Right, but they didn't apply them in Comcast. They still applied the but for analysis. Well, that's my point, Your Honor. And in Comcast, a Section 1981 case, Justice Gorsuch was clear that race had to be the but for. It had to be the sole reason for the termination. Comcast, I mean, I'm sorry, Bostock decided three months later, a Title VII case, applied the McDonnell-Douglas burden-shifting standard, and when it got to causation, Justice Gorsuch acknowledged that Congress amended the Civil Rights Act of 1991 and allowed for a mixed motive as a causation standard. That's not the case in Comcast. No, look, I agree with you that 81 and Title VII have different standards. I agree with you that but for is the standard here. But you're going to have to cite me the page of Comcast where Justice Gorsuch says it's the one and only but for. Because I know another thing he says in Comcast is, quote, whatever role McDonnell-Douglas has to play. In other words, it's just a framework. Sure. The ultimate question is, is it a but for or, as they put it in Bostock, one but for? I don't, and again, if you'll show me the page, I don't think I've ever seen the court say it has to be literally the sole, the only but for. Well, Your Honor, Justice Gorsuch went through a detailed analysis of the Civil Rights Act of 1866. And in his opinion, he clearly lays out that the Civil Rights Act of 1866 was specifically designed to make discrimination based on race unlawful. And he compares 1981 to Section 1982 of the 1866 Civil Rights Act, the criminal standard, to make it clear that race is the reason the Civil Rights Act of 1866 was passed. You do realize, though, that you're arguing for a much narrower, it may help you in this case, but in future cases, you're saying race could be the 99 percent reason somebody was in on your racial claim under 1981, because it wasn't the one but for cause. Yeah. You're arguing for a very strict standard. Your Honor, I'm simply articulating what the United States Supreme Court has suggested. Did you find the page that he – I may grab my – That's fine. Your Honor, in the analysis of Comcast, and I believe this is at 1015, so Comcast, I have the Supreme Court site, not the official site, Your Honor, 140 Supreme Court 1009 at page 1015, Justice Gorsuch lays out the following when he talks about the role of race. The focus fits naturally with the ordinary rule that a plaintiff must prove but for causation. If the defendant would have responded the same way to the plaintiff, even if he had been white, an ordinary speaker of English would say that the plaintiff received the same legally protected right as a white person. Conversely, if the defendant would have responded differently but for the plaintiff's race, it follows that the plaintiff has not received the same right as a white person, nor does anything in the statute signal that this test should change its stripes only in the face of a motion to dismiss. That was a motion to dismiss case. Here we're in a summary judgment case. Justice Gorsuch goes through his analysis and he says it has to be, but for race has to be the reason under a Section 1981 claim. Respectfully, Your Honor, opposing counsel and the plaintiff chose to bring this as a 1981 case. If they wanted to use mixed motive or mixed motivating factors, they could have filed under Title VII. And in fact, the record is clear that the plaintiff filed a motion to continue in the case so that he could pursue a Title VII case. He represented to the court that he was going to file an EEOC charge to pursue a Title VII case. That never happened. So he has stuck with Section 1981. I'm sorry, Your Honor. Ms. Brown. I want to go back to the discussion you were having with Judge Mays and Judge Grant about the role of race in ensuring equitable decisions. In the EEO analysis that we've been talking about, it notes that three other employees had been terminated or disciplined for similar violations of the sexual harassment policy. Correct. And I'm just wondering whether that cuts against your argument or helps your argument, if you could explain. Well, Your Honor, again, I want to make it clear that the role of race, and when Ms. Berenger was testifying as to comparables, she was not testifying as to people who had conducted, who had engaged in the same conduct. The record is clear that for people who engaged in the same conduct as the plaintiff who violated the company's policy on sexual harassment, African-American employees were also terminated. In fact, Ms. Berenger testified under oath, and she put in her affidavit, that one of the African-American employees who was terminated had no history of written warnings, had no history of violating company policies. In our case, Mr. Osman was a serial, predatory sexual harasser. On three separate occasions, he harassed his female co-workers. The fact that Ms. Berenger identified three African-American employees who were also terminated for violating the company policy makes it clear that race was not the but-for cause of Mr. Osman's termination. Thank you for your time. I have actually one more follow-up question. How would you differentiate your case from Smith v. Lockheed Martin, where there was also a chart that involved race? In Smith v. Lockheed Martin, Your Honor, they were actually considering race. They were taking race and applying termination decisions or promotional decisions to black people and white people separately. And what they were doing is they were saying for the white employees, after they got the race information, we're going to make this particular decision with regard to their employment because these people are white, and then we're not going to make these decisions because these people are black. They gathered the race information for the purpose of making the decision. In our case, the race information was provided simply as a method of demonstrating that the policies were not being applied unequally or unequitably. Thank you, Your Honor. Thank you. Thank you. If I may first address the point that Judge Mays raised regarding but-for cause. I am reading from Comcast at page 1014, quote, Section 1981 follows the general rule, a plaintiff bears the burden of showing that race was a but-for cause of his injury. In Bostock at page 1744, Justice Gorsuch wrote, the plaintiff's sex, I wrote, I have in here protected characteristic, but the plaintiff's sex need not be the sole or primary cause of the employer's adverse action. So too it has no significance here if another factor might also be at work or even play a more important role in the employer's decision. So respectfully, Judge Mays, you're correct. It is a but-for cause. It's not the sole cause. It's not 99 percent. But a but-for cause means that the person would not have been fired but for their race, right? Yes, ultimately. It means that the decision would have been different if the race has changed. Yes. If the race has changed, the decision is different, even though other factors And this is a great example of why this is a difficult standard. There are other factors involved here. There are allegations of sexual harassment, completely justifiable basis for terminating somebody. This is discussed by this Court in Merritt v. Dillard paper. The same issue arose, although it was in a retaliation case. And a harasser was not fired. He testified. And Merritt cited in a reply brief, Your Honor. What is your response to their point that we also terminated several African-American employees who committed similar conduct? That would show that if you commit this conduct, you're getting terminated regardless of race. The problem with that argument, with due respect to opposing counsel, the race of the other people who committed the same sort of violations is nowhere identified in the EEO analysis. Paragraph 15 of the EEO analysis, page 3 of Docket 71-4, identifies without the names being redacted, identifies three other individuals who engaged in allegedly similar conduct. No race identified. That means Ms. Bach, whatever the scope of her decision, whether it's complete control or just focused on the racial issue, she's not seeing anything about, are we applying our termination rules the same for harassers to blacks and whites? She can't possibly know what Ms. Berenger testified to in her declaration. She can't know it because it's not on this form. That information is not provided to her, not on this record. Maybe it was. We don't know. But it's not in this record. So I understand what counsel is saying. The problem is the decisionmaker has to have that information in order for his point to be valid. The decisionmaker here does not. And if I may quote from the defendant's interrogatory response, number 5, at 62-21, page 8, after the third instance of inappropriate behavior, Mr. Lyle Banks reviewed the facts and requested that Ms. Berenger put together a recommendation to submit to corporate for approval to proceed with the termination. The locals are not making that decision. They are merely making a recommendation. But insofar as with respect to Judge Grant's concerns, we argue the cat's paw. Is there clear evidence, as there is with respect to Ms. Bach, that raises an issue? Not with respect to the locals any more than in your general run-in-the-mill McDonnell-Douglas case. You have the locals making the decision, promoting somebody outside of Ostman's protected class, in quotes.  There's no evidence that they had already decided who to hire when they made that decision, is there? No. Not anything more than trying to draw an inference from what they did within three weeks, making a temporal proximity argument. It seems like the only... There is... I don't know that you have any evidence, certainly not direct, but even very little circumstantial that the locals consider race at all. Other than, Your Honor, the fact that they selected someone other than Ostman's race, I cannot disagree with you. And again, something that was decided after they had already recommended his termination? As far as we can tell from the record, yes. Okay. Thank you.